CASE 43—PETITION ORDINARY—OCT. 2.

# Louisville & Nashville R. R. Co. v. Brice.

APPEAL FROM CHRISTIAN CIRCUIT COURT.

1. WILLFUL NEGLECT—IMPROPERLY LOADED CARS.—Where a brakeman on a railroad train was killed while engaged in coupling cars, the mere fact that one of the cars was improperly loaded by reason of the fact that lumber projected over the end of it so as to interfere with the space necessary for coupling it, or even the fact that the con-

Louisville & Nashville R. R. Co. v. Brice.

ductor knew that the car was improperly loaded, does not of itself show willful neglect.  To constitute willful neglect in such a case, it must also appear that the conductor, or other person in charge of the train, knew, or, by the use of ordinary care, could have known, that the car was so improperly loaded *as to imperil the life of the servant or employe.*

2. CONTRIBUTORY NEGLECT is not a defense to an action under the statute for willful neglect, if willful neglect is proved.

3. WHERE SPECIAL FINDINGS ARE DIRECTED, it should be as to every fact necessary to make out the cause of action or the defense, and if the special verdict is thus complete, the appellate court will not look to the general verdict, or to the instructions that may have been given to the jury.

4. A SPECIAL VERDICT being asked, the court was bound to direct it, but it was in the court's discretion  to also order the jury to find  a general verdict

5. SPECIAL FINDINGS must be treated like a general verdict, and will not be disturbed unless flagrantly against the evidence.

JOHN FELAND FOR APPELLANT.

1. The court should have given a peremptory instruction to find for defendant.   Where the facts are clear, and show that the defendant has or has not been guilty of negligence, the court should so instruct the jury.  (Nehros v. R. R. Co., 14 Eng. and Am. R. R. Cases.)

2. When a master employs dangerous or defective machinery, or tools, or instrumentalities, and the servant has full knowledge of their dangerous character, and undertakes to perform the service required without complaint or promise of remedy, he thereby *waives* any neglect of the master which may have produced the danger or defect, and agrees to take the risk.    (2 Thompson on Negligence, vol. 2, p. 1147; *Id.*, p. 1015; Bervas v. Union Pac. R. R. Co., 20 Boston Law Reporter, 58; Sullivan v. Bridge Co., 9 Bush, 84; L., C. & L. R. R. Co. v. Mahoney's Adm'r, 7 Bush, 235; 12 Lea, Tenn., 63; 107 Ill., 44; 51 Mich., 253.)     Cases explained: L. & N. R. R. Co. v. Yandell, 17 B. M.. 593; L. & N. R. R. Co. v. Sickings, 5 Bush, 1; L. & N. R. R. Co. v. Collins, 2 Duv., 114; L. & N. R. R. Co. v. Robinson, 4 Bush, 507; L. & N. R. R. Co. v. Filbern's Adm'r, 6 Bush, 574; Claxton's Adm'r v. Lex. & Big Sandy R. R. Co., 13 Bush, 638; Jacob's Adm'r v. Lou. & Nash. R. R. Co., 10 Bush, 272; Digby v. Kenton Ins. Co., 8 Bush, 170; L. & N. R. R. Co. v. McCoy, 5 Ky. Law Rep., 397.

3. The distinction which the cases attempt to make between willful and gross neglect should be wiped out.   The object of the statute was to give to the personal representative, widow or heir the same right of action that the deceased would have had if he had survived the

injury. (Gen. Stats., chap. 57, secs. 1 and 3; Shearman & Redfield on Negligence, chap. 2, section 16, and note.)

R. W. HENRY AND HARRY FERGUSON FOR APPELLEE.

1. Where either party asks a special verdict, the court must order it, but may, in its discretion, direct a general verdict. (Witty v. C., O. & S. W. R. R. Co., 6 Ky. Law Rep., 321; Empire Coal and Mining Co. v. McIntosh, *Ibid.*, 631.)

2. This court will not reverse except for an error clearly prejudicial to the substantial rights of the appellant. (Civil Code, sec. 756; Thomas and Wife v. Tanner, 7 Mon., 51; Emmanuel v. Cocke, 6 Dana, 215.)

3. The court will not reverse for an error in the instructions if the special findings are sufficient to authorize the judgment, as the special findings control the general verdict. (Civil Code, sec. 317, subsec. 5, and sec. 328; Empire Coal and Mining Co. v. McIntosh, 6 Ky. Law Rep., 631; Witty v. C., O. & S. W. R. R. Co., *Ibid.*, 321.)

4. The evidence shows willful neglect on the part of the defendant. (L. & N. R. R. Co. v. McCoy, 81 Ky., 413; Alexander v. L. & N. R. R. Co., 83 Ky.)

5. Special findings like general verdicts, will not be set aside because they are against the evidence, unless *flagrantly* so. (Empire Coal and Mining Co. v. McIntosh, 6 Ky. Law Rep., 631.)

6. The damages are not excessive. (L & N. R. R. Co. v. Brooks' Adm'r, 5 Ky. Law Rep., 749; L. & N. R. R. Co. v. Fox, 11 Bush, 504.)

7. As there have been two verdicts for appellee, a new trial should not be granted upon the ground that the verdict is not sustained by the evidence. (Civil Code, sec. 341; L. & N. R. R. Co. v. Graves' Ass'ee, 78 Ky., 74; Dorsey v. Dougherty, 1 Mar., 183; Bennett v. Runyan, 4 Dana, 422.)

8. Alleged errors not made grounds for new trial will not be considered on appeal. (L., C. & L. R. R. Co. v. Mahoney's Adm'r, 7 Bush, 238; Farmer v. Gregory, &c., 78 Ky., 476.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

The appellant, the Louisville & Nashville Railroad Company, is asking the reversal of a judgment against it in favor of the widow of J. J. Brice for five thousand dollars for the killing of her husband by being run over, when engaged in coupling its cars, and in its employ as a brakeman, by one of its trains, through the alleged willful neglect of its agents.

Louisville & Nashville R. R. Co. v. Brice.

The action is brought under section 3, chapter 57, of the General Statutes, which authorizes it only when the killing is *willful,* and which was doubtless enacted to give the same right of action in the event of death to the widow, heir or personal representative as the deceased would have had if he had survived the injury.

The petition alleges, in substance, that the deceased was knocked down and run over by the train through the willful neglect of those in charge of it.

The answer is a denial, contributory neglect by the deceased being also pleaded.

An amended petition was filed alleging that the deceased, when killed, was, by the direction of the conductor in charge of the train, coupling a car improperly loaded with lumber ; that it projected beyond the end of the car so much as to interfere materially with the coupling of it, and to endanger the life of one undertaking to make the coupling ; and that her husband was knocked down by the lumber, and then run over and killed.

It clearly appears that the train was, at the time of the accident, being operated prudently ; and the question presented is, what is the liability of the company under the statute when death results to one of its servants from handling a car not properly loaded ? It does not clearly appear, in this instance, whether it was loaded by the appellant or the shipper, but probably by the latter.

The appellant asked the court to direct a special verdict *only.* This the court refused to do. It ordered a special verdict, but a general one also, giving in-

structions to the jury.    This was not error.    It was bound to direct a special verdict when asked, but it had the right, under the Code of Practice, and it was in its discretion, to also order the jury to find a general one.  (Empire Coal, &c., Co. v. McIntosh, 82 Ky. Rep., 554.)

The special verdict, aside from fixing the amount of damage, found but three facts, to-wit : first, that the lumber did so far project beyond the end of the car as to materially interfere with the space necessary to enable the brakeman to make the coupling ; second, that the injury to the deceased resulted from it ; and third, that he did not know of the improper loading, and did not have an equal opportunity with the others operating the train to know it.

Special findings must be treated like a general verdict.    They will not be disturbed unless flagrantly against the evidence.  They are not so in this instance. Therefore, without further discussion, we will accept them as true ; and the first question to be determined is, did they authorize the judgment?

When special findings are directed, it should be as to every fact necessary to make out the cause of action or the defense.    Nothing is then left to be done save an application of the law to them by the court.    If they are complete, the one way or the other, then they must control ; and thus a general verdict, if also had, has no effect, as the special one renders it unnecessary. It follows that if the special verdict be complete, then the appellate court will not look to the general verdict or the instructions that may have been given to the jury.

The special verdict in this instance, however, does not find facts showing *willful* neglect.

The mere fact that the car was improperly loaded, or that the lumber projected over the end of the car so as to interfere with the space necessary for coupling it, does not *per se* show willful neglect. Of necessity, timbers, for instance, must sometimes project, owing to their necessary length; and if a carrier could not carry them it could not discharge its duty to the public. If a car be improperly loaded, as by lumber projecting beyond the end of it, and even if this be known to the one in charge of the train, yet this fact is not so unusual or extremely dangerous as to evidence a reckless disregard for the sanctity of human life, or constitute willful negligence. (Kentucky Central R. R. Co. v. Somers' Adm'r, MS. Op., May 1, 1886.) It must also appear that the conductor, or the party in charge of the train, knew, or, by the use of ordinary care, should have known, that it was so improperly loaded as to imperil the life of the servant or employe. It may be to some extent improperly loaded, and yet not so as to apparently endanger the life of the brakeman, or place him in imminent peril; and if the conductor does not know, or by the use of ordinary care would not know, that this will be the effect of ordering the act to be done, he or his principal should not be held guilty of willful neglect.

As the special verdict did not authorize the judgment, we now turn to the consideration of the general one, and the instructions under which it was found.

The first one given for the appellee reads: "The court instructs the jury that it was the duty of the

railroad company, its agents and employes, either in
loading its cars or in accepting loaded cars from others
for transportation, to see that they were so loaded as
not materially to obstruct or interfere with the space
usually allowed and reasonably necessary for the en-
trance of the servants of said company in coupling
said cars

"That if they find, from the evidence in this case,
that the car of said company doing the injury to de-
ceased was so loaded as to unreasonably obstruct such
space, and they further believe that said company, its
agents or employes in charge of said train, had knowl-
edge of such improper loading, or by the use of reason-
able diligence might have ascertained such condition,
and neglected to remedy same, and if they further
believe that said J. J. Brice, while in the service of
said company, attempting to couple such car, and
using himself reasonable care and prudence for his
own protection, nevertheless received the injury that
caused his death, by reason of such improper loading,
then the jury should find for plaintiff such damages as
she has sustained by reason of same."

This told the jury in effect that the matters recited
in it constituted willful neglect; because the statute
does not authorize a recovery in such a case for a less
degree, and they were told that if they found the mat-
ters therein recited to be true, they must find for the
appellee.   The objection to it is that it does not submit
to them the very question as to which the special find-
ings were faulty.   The matter set out in the instruction
did not, if true, necessarily constitute any thing more
than gross neglect; and the question was not submitted

to the jury by a proper instruction, whether, if they found the cars were improperly loaded, and so as materially to interfere with the space necessary for coupling, whether the conductor knew, or should have known by the exercise of ordinary care, that this was the case to such an extent as not simply to cause the employe to use greater care, but so much so as to place him in imminent danger or peril of life.    If the conductor knew this, or should have known it by the exercise of ordinary care, and yet ordered the brakeman to make the coupling, then it may well be said that he did so recklessly and in disregard of human life.

The rule, as we have indicated, will not only enable the carrier to properly discharge the duties he owes to the public, but it will also forbid a reckless disregard of human life in a business which at best is extremely hazardous.

As the case must go back for another trial, it is proper to say that the plaintiff must show willful neglect upon the part of the agents of the appellant. When this once appears, contributory neglect can not be relied on as a defense.

Judgment reversed, with directions to grant a new trial, and for further proceedings consistent with this opinion.