EDWARD S. JAFFRAY, and others, *vs.* JOHN KING, of WILLIAM.

## *Construction of a Contract — Breach — Measure of Damages.*

A mercantile house in New York, by letter, dated the 19th of February, 1869, engaged the services of K from that date to the 30th of June following, as their salesman in the city of Baltimore, at a certain rate per month. K entered upon the service and discharged its duties without complaint, until he was dismissed therefrom by a letter dated the 8th of May, 1869, on the alleged ground that he had been attending to the business of another house. In a suit brought by K against his employers to recover damages for his wrongful dismissal from their service, it was HELD:

1st. That by the true construction of the contract, the plaintiff did not agree to give his *whole time* to the business of the defendants, but engaged to serve them in *good faith*, and to the extent of his ability as salesman in the city of Baltimore, in the sale of their goods; but if doing this did not require his whole time, he could, without violating his engagement with them, occupy the remainder in any other pursuit which was not inconsistent with his contract, not injurious to their interests, and which did not impair the value of his services to them as salesman of their goods in that market.

2d. That the measure of damages was fixed by the contract—a stipulated salary for a specified period—and the plaintiff was entitled to recover his whole salary under the contract, from the 1st of May (the date to which he had been paid) to the 30th of June inclusive, and the defendants could not claim a reduction therefrom of the amount which the plaintiff earned subsequent to his discharge and before the 30th of June, in another employment, they having failed to show that he could not have earned it without a violation of his duty under the contract, if he had not been discharged.

APPEAL from the Superior Court of Baltimore City.

The cause was argued before BARTOL, C. J., MAULSBY, MILLER, ALVEY and ROBINSON, J.

*William A. Fisher*, for the appellants.

By the true construction of the agreement, the appellants were entitled to the *entire time and services* of the appellee, and the instruction is vicious on this point.

The dealings of the appellee with Butterfield & Co. were inconsistent with his duties as a salesman for the appellants, and afforded sufficient ground for his discharge, and he is therefore entitled only to his salary up to the time of his dismissal.

The instruction given by the Court as to the measure of damages, was wholly erroneous. The *narr.* contained the common counts, but none for work and labor, and a count for the wrongful dismissal of the appellee, and the action was instituted before the expiration of the period of the hiring; and the evidence was applicable only to the count for the wrongful dismissal. In an action of such character, the Court could not properly instruct the jury that the appellee was *entitled* to any particular amount of damages. *Smith vs. Thompson,* 8 *Com. Bench,* 41; *Smith on Master and Servant,* 75 *Law Lib.,* 98.

The jury should have been directed that the measure of damages would be the contract price, reduced by what the appellee actually did earn after the dismissal, and what he might have earned by due and reasonable diligence. *Smith's Master and Servant,* 75 *Law Lib.,* 95, 96; *Mayne on Damages,* 92 *Law Lib.,* 108; *Jones vs. Jones,* 4 *Md.,* 609; *Elderton vs. Emmory,* 6 *Com. Bench,* 178; *Goodman vs. Pocock,* 15 *Queen's Bench,* 583; *McKean vs. Cowley,* 7 *L. T. N. S.,* 828; *Hartland vs. Gen. Ex. Bank,* 14 *L. T. N. S.,* 863; *Wright vs. Falkner,* 37 *Ala.,* 274; *Sherman vs. Champlain Trans. Co.,* 31 *Vt.,* 162; *Castigan vs. Mohawk and Hudson Railroad Co.,* 2 *Denio,* 609.

*R. Stockett Matthews,* for the appellee.

The contract being a written one, speaks for itself. It must be construed according to the plain intent and meaning

of the parties. There is no ambiguity in it. It is simply a contract of hiring, and does not profess to engage the exclusive time and services of the plaintiff. No evidence of custom was introduced to explain the nature and extent of similar contracts among persons engaged in the dry-goods trade, in the relation in which the plaintiff stood towards the defendants, namely, that of an agent non-resident at the home of the principal.

The word "salesman" in the contract, is equivalent to agent —an agent for limited purposes, and with limited powers.

The instruction of the Court below was therefore right, with reference to the manifest agreement of the parties, " that by the true construction of the contract contained in the letter of February 19, 1869, the plaintiff did not engage to give his *whole time* to the business of the defendants, but engaged to serve them efficiently and in good faith as their salesman in the city of Baltimore."

Even if the most rigorous construction be placed upon the " agreement " of the parties, the appellee had done nothing to violate its terms, or to contravene its spirit. The Court fairly informed the jury as to the true *gravamen* of the issue, and left it to them to find from the evidence whether the plaintiff had done anything " in violation of his duty to, and injuriously to the interests of the defendants," and the jury found that he had not.

If the defendants had shown that the *plaintiff* had been personally and actually selling goods for another house, they would still have been compelled to show, not simply a literal violation of the agreement, but that the plaintiff had failed to perform his duty in some manner, or in some way essential to their interest—in other words, that the alleged dereliction of duty was in some matter which *injured* them, and prevented the plaintiff from performing his proper duty to them. *Fillieul vs. Armstrong*, 7 *Ad. & El.*, 557; *Freeman vs. Taylor*, 8 *Bing.*, 124; *Remile vs. Hall*, 31 *Vermont*, 582; *Franklin vs. Miller*, 4 *A. & E.*, 599.

Under the special count, the plaintiff could recover damages for his wrongful dismissal, and the measure of damages was the stipulated amount subject to proper deductions, if any, which would have been earned had the contract remained intact; that amount was not recoverable *qua* salary, but as damages in the nature of compensation for the injury sustained by the plaintiff at the hands of the defendants. And in instructing the jury that the plaintiff, if they should find him guiltless of the alleged violation of his contract, "was entitled to recover his whole salary from May 1st to June 30th inclusive, less the amount in his hands unaccounted for," the Court simply meant to indicate *the least measure of damages which the jury were at liberty to award,* subject to proper deductions. The measure of damages was such a sum as the plaintiff would have earned had the "agreement" remained unrevoked by the appellants, less the amount in his hands to be credited to them.

MILLER, J., delivered the opinion of the Court.

This suit, begun by attachment on warrant, was brought by the appellee against the appellants, merchants of New York city, to recover damages for the wrongful dismissal of the plaintiff by the defendants from their service and employment. The contract between the parties was in writing, and is contained in the following letter, addressed by the defendants to the plaintiff, dated the 19th of February, 1869:

"*Dear Sir:* We hereby engage your services as *salesman* from this date, 'till the 30th of June next inclusive, at the rate of $350 per month. Your particular field will be the city of Baltimore, and you are at liberty to solicit all such dealers there as we do not already sell to. All new trade from that city, introduced by you, will go to your credit, and all orders obtained by you, whether from old or new customers, will likewise be credited to you."

The plaintiff was dismissed from this employment, by letter from the defendant, dated the 8th of May, on the alleged

ground that they had ascertained he had been attending to the business of another house. The only important testimony in the case was that given by the plaintiff himself. All the prayers offered on both sides were rejected, and an instruction granted by the Court whereby two questions are presented, the settlement of which will dispose of the whole case.

1st. What is the true construction of this written contract between the parties?

2d. Can the defendants reduce the damages in this case, by the sum of $200 earned by the plaintiff after his discharge, and before the 30th of June?

1st. There was no proof of usage, nor was there any other evidence *aliunde* to explain any of the terms of this contract, even if it were, in any respect, ambiguous, and the Court instructed the jury that, by its true construction, the plaintiff did not agree to give his *whole time* to the business of the defendants, but engaged to serve them efficiently and in good faith as *salesman* in the city of Baltimore, in the sale of *their goods,* and if the jury found from the evidence that he undertook the sale of, and sold goods of other persons, in violation of his duty to, and injuriously to the interests of the defendants, they had the right to terminate their agreement with him, and that the undertaking to sell, and the sale on commission for other persons, of goods of like character with those of the defendants, to the same class of buyers with the buyers of their goods, would be an employment inconsistent with his duty and injurious to the interests of the defendants, but if they found he did not perform such services for others, then the plaintiff is entitled to recover.

This, we are satisfied, is the true construction of the contract. It is not an agreement of hiring, by which, as for a menial employment, the master or employer is entitled to the entire time and services of the servant or employee in any service he may choose to dictate, for stipulated wages, but a contract by which the plaintiff became the defendants' agent

Jaffray, *et al. vs.* King.

for special purposes, and with limited powers, that is, to sell by sample and promote the sale.of their goods, and increase their business connections in a particular and distant market. In the discharge of that duty, he was bound to serve them in good faith, and to the extent of his ability, but if doing this did not require his whole time, he could, without violating his engagement with them, occupy the remainder in any other pursuit he might deem advantageous to himself, provided it was not inconsistent with his contract, not detrimental to their interests, and did not impair the value of his services to them as salesman of their goods in that market. The instruction very carefully and fully defines his duty under the contract, and the jury, to whom the matter was properly submitted, upon the evidence before them, found, as they well might, that he had, up to the time of his discharge, faithfully and effectually discharged that duty, and had not performed any services for others inconsistent therewith or detrimental to the interests of the defendants. If it had been the intention to engage the entire services and the whole time of the plaintiff, and that he should not engage in any other employment whatever, it would have been very easy to have inserted in the contract a clause to that effect.

2d. On the subject of damages, the Court instructed the jury that if they found for the plaintiff, under the previous part of its instruction, then the plaintiff is entitled to recover his whole salary under the contract, from the time he was unpaid up to the 30th of June inclusive, less the amount of the defendants' money they may find he had actually received and not accounted for. That part of this instruction which declares the "plaintiff is entitled to recover" his salary, we regard as merely an announcement that such is the true measure of damages in this case, and not a peremptory command to the jury to find any particular sum as damages. The objection to this instruction, on the part of the appellants, is, that in a case like this, where the suit is for a breach of the contract by a wrongful dismissal, the defendants may reduce

Jaffray, *et al.* *vs.* King.

the damages by what the plaintiff actually earned or might, by due and reasonable diligence, have earned after his dismissal, and before the 30th of June, and hence the defendants were entitled to a deduction for the $200 so earned by the plaintiff. If we assume this rule to be correct, and to apply in ordinary cases where the contract is for the whole time and services of the plaintiff, and he seeks redress in this form of action, we yet think there was no error in the Court's instruction in this case. The measure of damages was fixed by the contract, that is, the stipulated salary for the stipulated period, and by the construction we have placed on that contract, the plaintiff was at liberty to engage in any other employment consistent with the discharge of his duty thereunder. If, therefore, the defendants sought to reduce the damages thus fixed, they must do so, not simply by showing what sum the plaintiff actually earned, or might have earned, after his dismissal, but by showing further that he could not have earned it without a violation of his duty under the contract, if he had not been discharged. On this latter point, there is, in our opinion, an entire failure of proof. We can discover no evidence in the record from which it could rationally be inferred the employment in which this $200 was earned, was in any way detrimental to the interests of the defendants, or that he could not have earned this small sum in the same or some other employment, between the 8th of May and the 30th of June, and still have performed, in the strictest sense, his duty to the defendants, if he had not been discharged by them ; and, as we have said the *onus* was on the defendants to establish this before they could demand a reduction of damages for the amount so earned.

*Judgment affirmed.*

(Decided 24th February, 1871.)

Alvey, J., dissented on the second point.